## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DARRELL WAYNE ROPER, 345-773,
  SID # 394-5640,                        *

Plaintiff                                        *

v                                                *        Civil Action No. PX-19-0021

WEXFORD HEALTH SERVICES, INC.,      *

Defendant                                  *

### MEMORANDUM OPINION

Darrell Wayne Roper, an inmate currently confined at Eastern Correctional Institution ("ECI"), filed suit against Defendant Wexford Health Sources, Inc. ("Wexford"), asserting that he received constitutionally inadequate medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 1, pp. 1, 4-6. Roper also brings common law medical malpractice claims. *Id.,* p. 4. Wexford now moves for dismissal or alternatively summary judgment in its favor. The Court has reviewed all pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, the Court grants Wexford's motion.

### I.  Background

The parties have attached records which this Court considers in the light most favorable to Roper. It is undisputed that Roper, age 51, suffers from hepatitis C, hypertension, backache, high cholesterol and esophageal reflux. ECF No. 10-4; ECF No. 10-5, ¶ 4. Consequently, Roper is considered a chronic care patient who is seen, at a minimum, every 90 days in the facility's chronic care clinic, and more frequently if medically necessary. ECF No. 10-5, ¶ 5.

Although Wexford maintains that the clinic attempts to see inmates within 30 days of arrival to a new facility, ECF No. 10-5 ¶ 5, Roper avers that as of January 1, 2019, he had not yet been seen in the chronic care clinic since his transfer to ECI on October 31, 2018. ECF No. 1, pp. 4-5. The medical record reveals that on October 26, 2018, Roper had been seen in the clinic while housed at Dorsey Run Correctional Facility, and was provided with 33 tablets of Elavil (amitriptyline)[3] 50 mg and 21 Baclofen[4] tablets, 20 mg. ECF No. 10-4, p. 2. During his intersystem transfer, Wexford personnel examined Roper again on October 29, 2018 while he was at Central Maryland Correctional Facility. *Id.,* p. 3. At that examination, Roper was given 50 mg. amitriptyline, 50 mg. of Atenolol,[5] 600 mg. of Gemfibrozil,[6] 20 mg. of Omeprazole[7] twice a day, as well as 20 mg. of Baclofen and 25 mg. of hydrochlorothiazide.[8] *Id.*

Roper arrived at ECI on October 31, 2018 and was assessed that same day by Wexford medical personnel. At that intake evaluation, Roper voiced no complaints and was continued on all six medications until December 9, 2018. ECF No.10-4, pp. 4-5.

After his transfer to ECI, Wexford medical personnel treated Roper on November 8, 2018, for complaints of headaches; at that time Roper expressed his concern that he had not yet been seen in the chronic care clinic because his medications were due for renewal. ECF No. 10-4, p. 7. Roper again complained, via sick call slips on November 11, 13, and 15, 2018, that he had not yet

---

[3] Elavil is an antidepressant. *See* https://www.drugs.com/elavil.html (last reviewed September 27, 2019).
[4] Baclofen (gablofen) is a muscle relaxer and antispasmodic agent. *See* https://www.drugs.com/baclofen.html (last reviewed September 27, 2019).
[5] Atenolol is a beta-blocker that among other uses is recommended to treat hypertension (HBP). *See* https://www.drugs.com/atenolol.html (last reviewed September 27, 2019).
[6] Gemfibrozil helps reduce cholesterol and triglycerides (fatty acids) in the blood. *See* https://www.drugs.com/gemfibrozil.html (last reviewed September 27, 2019).
[7] Omeprazole (Prilosec or Zegerid) is used to treat gastroesophageal reflux disease (GERD). *See* https://www.drugs.com/omeprazole.html (last reviewed September 27, 2019).
[8] Hydrochlorothiazide is used to treat high blood pressure and fluid retention. *See* https://www.drugs.com/hydrochlorothiazide.html (last reviewed September 27, 2019).

been seen in the chronic care clinic and that he had run out of blood pressure medication. *Id.,* pp. 8-9.

On December 5, 2018, Roper was seen in the chronic care clinic for the first time since moving to ECI 35 days before. ECF No. 10-5, ¶ 8; ECF No. 10-4, pp. 11-16. During that visit, Roper reported that he had been taking his medications as prescribed, but that he was experiencing headaches and had not yet received eyeglasses prescribed to him before transfer. *Id.,* p. 11. At the visit, Roper was screened for prostate disease, his medications were renewed and modified to address his symptoms, his bottom-bunk orders were renewed, and he was scheduled for follow up clinical appointments to assess his cardiovascular and hepatitis C status, as well as to address pain management to be scheduled in three months. *Id.*, pp. 11-13. Shortly after the December 5 visit, Roper filed suit.

## II. Standard of Review

Wexford moves to dismiss the Complaint or alternatively for summary judgment in its favor. A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules if Civil Procedure tests the sufficiency of the Complaint. When reviewing such a motion, the Court all well-pleaded Complaint allegations as true and most favorably to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005), citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not

3

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

However, the parties have also submitted evidence that go beyond the facts averred in the Complaint.[10] Accordingly, the Court may construe the motion as one for summary judgment brought pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is proper where no genuine issue as to any material fact entitles the moving party to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). When assessing the propriety of summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all inferences in his favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

---

[10] Although motions for summary judgment customarily follow formal discovery, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (2011), where the motion is filed prior to discovery, the non-movant must oppose the court reaching summary judgment and justify the need for formal discovery. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Under Rule 56(d), the non-movant must explain why, "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. *See* Fed. R. Civ. P. 56(d); *see also Harrods*, 302 F.3d at 244-45. Despite receiving notice that Wexford moves for summary judgment, Roper has not requested formal discovery and attached documents in support of his response. Accordingly, the Court sees no impediment proceeding on the motion as one for summary judgment.

## III. Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" through the guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment," *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), and may include claims premised on denial of medical care. To sustain this claim, the plaintiff must demonstrate that defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). To demonstrate a defendant's deliberate indifference to a serious medical need, the plaintiff must show that, objectively, he was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical care but failed to provide it or assure that necessary care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

The subjective component is satisfied only where a state actor "subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective

recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). On the other hand, simple medical negligence "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

Wexford principally contends that, assuming it functions as a state actor, the claims fail because Roper has pleaded solely *respondeat superior* liability which is unavailable in constitutional injury claims brought pursuant to 42 U.S.C. § 1983. Wexford is correct that liability under § 1983 "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). A claim cannot proceed against Wexford unless Roper demonstrates that: (1) a supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the two. *Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

When construing Roper's allegations as true and most favorably to him, Roper does not

allege any supervisory liability sufficient to survive challenge, and thus, the Court could dismiss the Complaint on that basis alone. However, the Court finds that when viewing the record evidence most favorably to Roper, even if Roper had averred facts in the Complaint sufficient to hold Wexford as the liable party, no rational trier of fact could conclude that he was provided constitutionally deficient medical care. Thus, summary judgment on the Eighth Amendment claim, even assuming that Wexford is properly sued, must be granted in Wexford's favor.

Roper primarily argues that he has received inadequate medical care at ECI because his blood pressure has never been assessed and that he has suffered untreated migraines, blackouts, and extreme emotional distress. ECF No. 13-1. In response, Wexford highlights that shortly after Roper arrived at ECI, Wexford staff renewed his medications, addressed his other medical concerns, and set appointments for future follow-up care. The record evidence does not reflect any contemporaneous complaints back pain, blackouts, difficulty sleeping, panic attacks, or heart palpitations. At base, says Wexford, Roper wishes to have access to a chronic care clinic on demand, which is neither reasonable nor appropriate in a prison setting.

The Court agrees with Wexford. "The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). Viewing the evidence most favorably to Roper, he did indeed receive timely medical attention. He was seen in chronic care within 35 days of first arriving at ECI and had two prior medical visits, one at intake and the other to address his headaches. Roper has generated no evidence that any perceived lack of attention is sufficiently serious to amount to deliberate indifference so a serious medical need. Accordingly, summary judgment is properly granted in Wexford's favor.

To the extent that Roper raises state law allegations of negligence or medical malpractice by Wexford and its personnel, the Court declines to exercise supplemental jurisdiction over these claims. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966). The state common law claims are dismissed without prejudice so that Roper may file suit in state court, if he chooses.

The Court notes, however, that the Maryland Health Care Malpractice Claims Act ("the Act"), Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01, *et seq.*, requires that claims alleging medical malpractice must first be filed with the Health Care Alternative Dispute Resolution Office (HCADRO) before filing suit. *See id.* at § 3-2A-02; *see also Roberts v. Suburban Hospital Assoc., Inc.*, 73 Md. App. 1, 3 (1987). No evidence demonstrates that Roper has submitted his claims to HCADRO, as required. Roper is cautioned that failure to proceed initially HCADRO may bar any future suits sounding in medical negligence.

Summary judgment is granted in Wexford's favor. A separate order follows.

Date:     10/2/19                                          /S/
                                                  Paula Xinis
                                                  United States District Judge